IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,

v.   Criminal No. 1:20-cr-123 (LO)

WILLIAN ALEXIS BENAVIDES PENA,   Sentencing: September 22, 2020

Defendant.

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Title 18 U.S.C. § 3553(a), Mr. Willian Alexis Benavides Pena hereby notifies the Court, through counsel, that he has received and reviewed the Pre-Sentence Investigation Report ("PSR").  Mr. Benavides has no objections to the PSR, and agrees with the Probation Officer's calculation of the offense level (16), Criminal History Category (IV), and advisory sentencing range of 33-41 months.  Although Mr. Benavides had been to jail for only 15 days total at the time of the offense, he has now been in continuous custody for nearly three years, since his arrest on October 7, 2017 (the last 10 months of which counts toward the instant offense).  On these facts, Mr. Benavides submits that the advisory Guideline range substantially overstates the need for sentencing for two distinct reasons.  First, five of his eight criminal history points relate to sentences he received after the instant offense; as a result, he had not experienced the deterrent effect of those sentences at the time of the conduct for which he is now before the Court.  Second, his offense level is increased by five levels because the offense involved a firearm – conduct over which he, as an accessory after the fact, had no control.  Without those offense levels and criminal history points, Mr. Benavides's advisory sentencing range would be 12-18 months, which he submits more accurately reflects the purposes of sentencing on these facts.

## I.     Legal Standard

Determining the proper sentence in a federal criminal case is within the discretion of the District Court.  The Court's discretion is to be exercised upon consideration of the purposes of sentencing in light of the particular case and the particular defendant before it.  The Supreme Court has emphasized that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a).  *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009).  The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing that the Sentencing Guidelines are simply an advisory tool to be considered alongside the other § 3553(a) statutory considerations.

"Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson.*  555 U.S. at 352.  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Id.* (emphasis in original).  In other words, sentencing courts commit legal error by using the advisory guidelines range as a default to be imposed unless a basis exists to impose a sentence outside that range.

Upon consideration of the seven co-equal factors set forth in § 3553(a), a sentencing court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007).  While the sentencing court must begin its analysis by correctly calculating the advisory sentencing range,

the court is then free in light of the other statutory sentencing factors to impose an entirely different sentence. This is because, under *Rita,* a district court is free simply to disagree, based on the § 3553(a) sentencing factors, with the Sentencing Guidelines' "rough approximation" of the appropriate sentence for any given case. *Id.*

## II.     Application of the Statutory Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)

As set forth in the PSR, Mr. Benavides Pena is 27 years old. He was 23 when he committed the offense for which he is before the Court, and has been in continuous custody for nearly the entire time since then – after having spent only 15 days in custody for all of his prior criminal conduct. Mr. Benavides's personal background is unfortunate, to say the least. Without a doubt, his conduct while in the United States reflects his difficult upbringing, his young age, and his lack of parental guidance. As the PSR explains, Mr. Benavides's mother left him in the care of relatives in El Salvador when he was an infant to make a better life for herself and her family in the United States. Then, when he was ten years old and she sent for him, he came illegally to the United States – uprooting him from the only immediate family he had ever known, and reuniting him with a mother with whom he had almost no relationship and who was only 16 years older than him. From that point forward, Mr. Benavides was raised by his mother and lived with her and his three younger siblings, all of whom were born in the United States and had never known him before. None of that, of course, excuses the conduct in which Mr. Benavides engaged as a young adult, but it explains how he ended up making the poor decisions for which he is now before the Court.

The offense, of course, is a serious one, but Mr. Benavides's role in it was as an accessory after the fact – a distinction that, while reflected in the Guidelines range, is not fully accounted for. His role was lesser than that of the other participants for two distinct and substantial reasons: not only

3

was he the getaway driver as opposed to one of the robbers, but he also learned of the offense only after it had occurred, when he had little realistic choice but to drive away. That choice was still criminal, and Mr. Benavides has taken responsibility for that fact by pleading guilty, but the Guideline range – even with the reduction for being an accessory after the fact – overstates the need for sentencing on these facts.

     As already noted, Mr. Benavides's Guideline range is elevated in two distinct ways that do not comport with the underlying purposes of sentencing. First, his Criminal History Category is based largely on conduct for which he was convicted and has served sentences *since* committing the instant offense. In other words, rather than that prior history elevating the need for deterrence – by showing that he continued to commit crimes after receiving those sentences – in this case it accomplishes the opposite. That is, at the time of the instant offense, Mr. Benavides had never been to jail or prison before, with the exception of 15 days for a misdemeanor illegal entry conviction in 2016. And, reflective of the minimal criminal history he had at that time, he would have only three criminal history points, and be in Criminal History Category II, if not for the offenses for which he was charged and sentenced in the interim. In fact, had the instant prosecution proceeded more expeditiously, that would be his Criminal History Category for purposes of the instant sentencing. But, as a result of events beyond Mr. Benavides's control, he was brought to the other jurisdictions first and ends up two categories higher. Moreover, given that Mr. Benavides has now been in continuous custody for nearly three years – and that *all* of that time will work together to accomplish deterrence – the recent convictions actually decrease the need for a lengthy sentence at this time rather than (as the Guidelines suggest) increasing it.

4

Similarly, the inclusion of the five-level firearm enhancement has a drastic effect on Mr. Benavides's advisory Guideline range even though it does not reflect upon his personal conduct, or even upon conduct in which he agreed to participate. This is not, for example, a case in which Mr. Benavides conspired to commit a robbery with others, knowing that some of the group (but not him) would be armed. On those facts, the Guidelines rightly impose a sentencing enhancement for use of a firearm – even though the defendant did not *personally* use one – because the enhancement reflects the danger posed by the conduct in which the defendant knowingly agreed to participate. Here, though, Mr. Benavides only knew about either a robbery or a use of a firearm when the robbers came running back to the car he was in and told him to drive away. In those circumstances, the reduction for being an accessory after the fact – which would apply whether a firearm had been involved or not – does nothing to decrease the additional sentencing range Mr. Benavides faces for the involvement of a firearm, despite his lack of involvement in the conduct supporting that enhancement. Accordingly, the five-level firearm enhancement substantially and unfairly increases the applicable Guideline range here.

As a result, Mr. Benavides submits that the Guideline range that more appropriately reflects his conduct and the need for sentencing is 12-18 months. That range would be based on Criminal History Category II (the range that would apply without counting the convictions and sentences that occurred after the offense conduct), and offense level 12 (subtracting five offense levels from that found in the PSR and adding one level because – at a lower offense level – Mr. Benavides would receive only a two-point reduction for acceptance of responsibility). That sentencing range not only reflects the serious nature of the offense, but also Mr. Benavides's limited role in it and the fact that his sentence immediately follows another lengthy term of incarceration. On these facts, where Mr.

Benavides barely spent any time in jail or prison before the offense, there is nothing in his background to suggest that he needs a term of incarceration as long as the Guidelines range to accomplish the purposes of sentencing, particularly where the instant term of incarceration is part of a longer term of incarceration for, in part, related conduct. *See* PSR ¶ 65.

## **CONCLUSION**

For the foregoing reasons, Mr. Benavides Pena submits that this Court should impose a sentence within the Guideline range of 12-18 months, which is more reflective of the purposes of sentencing and his offense conduct than the range calculated in the PSR. Further, in light of his financial condition and his almost certain removal from the United States, Mr. Benavides Pena agrees with the Probation Officer that he lacks the ability to pay a fine. *See* PSR ¶ 69.

Respectfully submitted,

WILLIAN ALEXIS BENAVIDES PENA

By Counsel,

Geremy C. Kamens,
Federal Public Defender


By: ___/s/_____
Todd M. Richman
Va. Bar # 41834
Assistant Federal Public Defender
Attorney for Mr. Benavides Pena
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0845 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

        /s/
Todd M. Richman
Va. Bar # 41834
Assistant Federal Public Defender
Attorney for Mr. Benavides Pena
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0845 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)